IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-27-D

| | |
|---|---|
| ALICE H. NORFLEET, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Alice H. Norfleet ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 12, 14. Both filed memoranda in support of their respective motions. D.E. 13, 15. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 25 Aug. 2016 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## BACKGROUND

### I. CASE HISTORY

Plaintiff filed an application for DIB on 8 June 2012, alleging a disability onset date of 8 May 2012. Transcript of Proceedings ("Tr.") 12. The application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 12. On 28 April 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational

expert testified. Tr. 28-62. The ALJ issued a decision denying plaintiff's claim on 29 August 2014. Tr. 12-21. Plaintiff timely requested review by the Appeals Council. Tr. 7. On 20 November 2015, the Appeals Council denied the request for review. Tr. 1-3. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. On 15 January 2016, plaintiff commenced this proceeding for judicial review, pursuant to 42 U.S.C. § 405(g). *See* Compl. (D.E. 1).

## II.   STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four,

whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[1] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[2]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[3] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

---

[1] *See also* 20 C.F.R. § 404.1545(a)(1).

[2] *See also* 20 C.F.R. § 404.1545(a)(2).

[3] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

### III. ALJ'S FINDINGS

According to the date of birth on various documents of record (*see, e.g.*, Tr. 33), plaintiff was 52 years old on the alleged onset date of disability (8 May 2012) and 53 years old on the date of the hearing (28 April 2014). Plaintiff testified that she has an associate's degree in assistant teaching. Tr. 35-36. The ALJ found that plaintiff has past relevant work as a teacher's aide, childcare worker, and nursery school attendant. Tr. 19 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 14 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: disorders of the back with scoliosis treated with a surgically implanted rod; cervical radiculopathy treated with fusion at C5-C6; lumbar radiculitis; obesity; degenerative joint disease with osteoarthritis of the hips; and hypothyroidism. Tr. 14 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 16 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), lifting and carrying 20 pounds occasionally and 10 pounds frequently. The claimant is capable of standing, walking, and sitting for six hours in an eight-hour workday, except she requires a postural change

every 30 minutes that would last no longer than two minutes, only occasional climbing and occasional exposure to hazards.

Tr. 16 ¶ 5.[4]

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a teacher aide I (DOT no. 099.327-010), childcare worker[5] (DOT no. 092.227-018), and nursery school attendant (DOT no. 359.677-018), all as generally performed. Tr. 19 ¶ 6. The ALJ made the alternative finding at step five that there are other jobs in significant numbers in the national economy that plaintiff could perform, including jobs in the occupations of teacher aide II (DOT no. 249.367-074),[6] companion (DOT no. 309.677-010), and playroom attendant (DOT no. 359.677-026). Tr. 20 ¶ 6. The ALJ therefore concluded that plaintiff had not been under a disability from the alleged onset of disability, 8 May 2012, through the date of her decision, 29 August 2014. Tr. 21 ¶ 7.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775

---

[4] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, L-Light Work, 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

[5] Although the ALJ refers to this occupation, DOT no. 092.227-018, as childcare worker, the DOT identifies it as "teacher, preschool." The court does not deem this discrepancy material.

[6] The ALJ refers to the DOT number for teacher's aide II as 249.357-074, but the correct DOT number is 249.367-074. This error is not material.

(4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## DISCUSSION

Plaintiff seeks reversal of the ALJ's decision and the award of benefits or, in the alternative, remand for a new hearing on the grounds that the ALJ erred by improperly assessing certain medical opinion evidence, not providing a logical bridge between her discussion of the evidence and her RFC determination, and not properly evaluating plaintiff's carpal tunnel

syndrome ("CTS").[7] Because the issue of plaintiff's CTS is dispositive of this appeal, the court will limit its discussion to that issue.

The ALJ determined at step two that plaintiff's CTS was a nonsevere impairment. Tr. 14 ¶ 3. She summarized the evidence relating to it as follows:

> The claimant was diagnosed with mild left median mononeuropathy in April 2012 by EMG/NCS[8] (Ex. 2F). In October 2013, the claimant was prescribed wrist splints for nighttime use (Ex. 17F). She had [sic] diagnosis of bilateral carpal tunnel syndrome in April 2014. On May 5, 2014, she had left carpal tunnel release with symptom improvement and healing of her incision. Records show plans for right carpal tunnel release in the future (Ex. 15F, 16F).

Tr. 14 ¶ 3. The ALJ then explained the basis for her finding of nonseverity with respect to plaintiff's CTS, as well as the other impairments she found nonsevere: "These conditions are acute, episodic, medically managed and, or do not cause more than a minimal effect on the claimant's ability to perform work-related activities and, are therefore, nonsevere." Tr. 14-15 ¶ 3.

This explanation misstates the standard for a nonsevere impairment. The Regulations define a nonsevere impairment as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are, of course, the abilities and aptitudes necessary to do most jobs. *Id.* The Fourth Circuit has explained that an "impairment can be considered as not severe only if it is a *slight abnormality*

---

[7] CTS "occurs when the median nerve, which runs from the forearm into the palm of the hand, becomes pressed or squeezed at the wrist," which can result in pain, weakness, or numbness in the hand or wrist. NIH: National Institute of Neurological Disorders and Stroke, What is carpal tunnel syndrome?, http://www ninds nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel htm (last visited 27 Dec. 2016). Diminished grip strength "may make it difficult to form a fist, grasp small objects, or perform other manual tasks." *Id.*, What are the symptoms of carpal tunnel syndrome?.

[8] "EMG" refers to electromyography, which is "a test that checks the health of the muscles and the nerves that control the muscles." Medline Plus, Electromyography, https://medlineplus.gov/ency/article/003929 htm (last visited 27 Dec. 2016). "NCS" refers to nerve conduction studies, also known as nerve conduction velocity studies. *The Merk Manual of Diagnosis and Therapy* ("*Merk Manual*") 1597 (Robert S. Porter, M.D. *et al.* eds., Merk Sharp & Dohme Corp. 19th ed. 2011). During such a study, "a peripheral nerve is stimulated with electrical shocks at several points along its course to a muscle, and the time to initiation of contraction is recorded." *Id.*

which has such a *minimal* effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis original) (internal quotations marks omitted).

While the ALJ includes the foregoing criteria from the Regulations in the standard for nonseverity she applied, she improperly included the additional criteria that the impairment be "acute, episodic, medically managed." Tr. 14-15 ¶ 5. By stating that each of these additional criteria "and, or" the criteria in the Regulations apply, the ALJ signals that these additional criteria are both alternatives and supplements to the criteria in the Regulations. In other words, an impairment is nonsevere if it meets any one of the additional criteria, whether or not it meets the criteria in the Regulations, or if it meets any combination of any of the criteria in the standard.

As stand-alone criteria, two of the additional criteria—acute and episodic—plainly do not comport with the criteria in the Regulations. "Acute" can be defined as meaning of rapid onset, not prolonged, and, loosely, severe. *See Stedman's Medical Dictionary*, Acute, entry no. 10070 (database updated Nov. 2014). The fact that an impairment is acute therefore does not establish that it fails to significantly limit the ability to do basic work activities. *See*, *e.g.*, *Hines v. Barnhart*, 453 F.3d 559, 567 (4th Cir. 2006) (finding that "acute" pain attacks from sickle cell disease along with other related limitations were disabling); *Davis v. Astrue*, Civ. Act. No. 8:11–cv–02223–CMC–JDA, 2012 WL 5879436, at *1 (D.S.C. 6 Nov. 2012) (noting ALJ's finding that claimant's "acute" pulmonary heart disease was a severe impairment), *rep. & recomm. adopted*, 2012 WL 5878857 (20 Nov. 2012). Similarly, the fact that an impairment is episodic does not necessarily mean that it lacks a significantly limiting effect on the ability to perform

basic work activities. *See*, *e.g.*, *Dean v. Astrue*, Civ. Act. No. 9:06-cv-3431-GCK-GRA, 2008 WL 373624, at *16 (D.S.C. 30 Nov. 2007) (noting that the ALJ found claimant's "episodic" dizziness to be a severe impairment), *rep. & recomm. adopted*, 2008 WL 373624, at *3 (8 Feb. 2008).

Even the fact that an impairment is medically managed would not necessarily establish that it imposes no significant limitations on the ability to perform basic work activities. The degree to which the medical management mitigated the limiting effects of the impairment would, of course, be determinative.

The ALJ's misstatement of the standard for nonseverity would have been immaterial with respect to her determination on plaintiff's CTS had she specified that she grounded this determination on the criteria from the Regulations included in the standard she applied. But she made no such specification. The court is left to speculate as to which of the criteria in the standard, individually or collectively, on which she based her determination.

Errors at step two can be rendered harmless if the ALJ's decision shows that the ALJ adequately considered the impairment in question at later steps in the sequential analysis. *See Mitchell v. Colvin*, No. 5:15-CV-344-D, 2016 WL 3944689, at *3 (E.D.N.C. 28 June 2016) ("Thus, courts have found that an ALJ's failure to find a particular impairment severe at step two does not constitute reversible error where the ALJ determines that a claimant has other severe impairments and proceeds to evaluate all the impairments at the succeeding steps in the evaluation."), *rep. & recomm. adopted*, 2016 WL 3945322 (19 July 2016); *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. 23 Feb. 2009) (noting that, although the Fourth Circuit has not addressed the question, it agrees with the conclusions of other courts that an error at step two may be deemed harmless where the ALJ addresses the impairment at the

9
Case 5:16-cv-00027-D   Document 17   Filed 12/27/16   Page 9 of 15

remaining steps of the analysis); *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, *4 (E.D.N.C. 10 Oct. 2008) (finding that ALJ's failure to set forth specific facts at step two regarding the severity of claimant's knee impairment was not reversible error because the ALJ considered all of claimant's impairments in formulating the claimant's RFC); *see also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) (finding that the ALJ's error in the step two analysis was not reversible error). Here, the ALJ failed to adequately address plaintiff's CTS at subsequent steps.

For example, the ALJ does not expressly address why she omitted any limitations associated with plaintiff's CTS from her RFC determination. While there is evidence tending to minimize any limitations resulting from plaintiff's CTS, such as the evidence of her activities of daily living (*see* Tr. 15 ¶ 3; 17 ¶ 5), there is also evidence substantiating significant limitations. The ALJ needed to, but did not, explain why she did not credit such evidence. Indeed, she makes only one passing express reference to plaintiff's CTS in her discussion of plaintiff's RFC.[9] *See* Tr. 18 ¶ 5.

The evidence of plaintiff's CTS extends back to before the alleged disability onset date of 8 May 2012. Although considered at one point to be related to her neck pain, in March 2012, plaintiff complained that her hands became numb while driving or holding a telephone. Tr. 285. On 12 April 2012, she was diagnosed with CTS. Tr. 284. On 15 May 2012, plaintiff continued to complain of numbness in her hands. Tr. 278. Plaintiff had surgery on her cervical spine on 16

---

[9] With respect to a 28 October 2013 physician's visit, which is discussed further below, the ALJ notes that plaintiff was found to have "normal strength and full range of motion throughout," but plaintiff's CTS-based complaint at that time was numbness. *See* Tr. 487; *see also Monroe v. Colvin*, 826 F.3d 176, 189-90 (4th Cir. 2016) (holding that ALJ failed, as required, to build an accurate and logical bridge from evidence concerning claimant's sleep apnea to his conclusion that claimant's statements concerning his narcolepsy were not credible).

May 2012 (Tr. 276), but plaintiff's primary care physician, Natalie Doyle, M.D.,[10] continued to refer to plaintiff's CTS diagnosis in her records (Tr. 276, 273). On 28 October 2013, plaintiff presented to Dr. Doyle with bilateral hand numbness, which plaintiff stated had been occurring for years.[11] Tr. 487. Dr. Doyle found that plaintiff had positive Tinel's[12] and Phalen's[13] signs and again noted the diagnosis of bilateral CTS. Tr. 489-90. She encouraged plaintiff to wear wrist splints at night and, as needed, during the daytime. Tr. 490.

On 20 January 2014, plaintiff presented to Dr. Doyle with pain and burning in both hands, decreased sensation, and weakness. Tr. 483. Plaintiff's symptoms were described as becoming worse and as being aggravated by grasping. Tr. 483. Dr. Doyle noted that plaintiff had positive Tinel's and Phalen's signs bilaterally and "known [bilateral] CTS." Tr. 483, 485.

On 10 April 2014, plaintiff saw Raymond M. Baule, M.D., a neurological surgeon, for pain, numbness, and tingling in her hands, which was she reported was worsening. Tr. 472. Dr. Baule found that plaintiff's Phalen's sign test was positive bilaterally and noted that plaintiff was scheduled for carpal tunnel surgery on her left wrist. Tr. 473.

At the hearing on 28 April 2014, plaintiff testified:

> I have trouble with grasping money right now, like if I drop a coin, because of my hands. I have a hard time grasping.

---

[10] The record does not indicate Dr. Doyle's specialty, but plaintiff asserts that she is a board-certified internist. Pl.'s Mem. 11 (citing Natalie Doyle, M.D., http://www.nadoyle.com/Office/MeettheDoctor.aspx (last visited 27 Dec. 2016)).

[11] Dr. Doyle's progress note reads in relevant part: "Bilateral hand numbness-has been occurring for several years, but occurring during daytime hours which is new." Tr. 487 (case altered). The notion that the occurrence of numbness during the daytime was new is contradicted by other evidence of record. *See*, *e.g.*, Tr. 285. The resolution of such conflicts is, of course, the province of the ALJ.

[12] A Tinel's sign test is strongly suggestive of CTS. *Merk Manual* 391. During the test, "median nerve paresthesias are reproduced by tapping at the volar surface of the wrist over the site of the median nerve in the carpal tunnel." *Id.*

[13] A Phalen's sign test is also suggestive of CTS and is a "[r]eproduction of tingling with wrist flexion." *Merk Manual* 391.

Tr. 54. The ALJ did not address specifically the credibility of this statement. While the ALJ found generally that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms she alleges are not fully credible, the sufficiency of this finding with respect to plaintiff's statements regarding her CTS is questionable given the uncertainty regarding the adequacy of the ALJ's consideration of the other evidence relating to plaintiff's CTS.

On 22 May 2014, about a month after the ALJ hearing and three months before issuance the ALJ's decision, Dr. Baule noted that plaintiff had undergone a carpal tunnel release surgery on her left wrist and that her "symptoms [were] much improved compared to preoperative." Tr. 531. But plaintiff continued to have pain and numbness in her right hand and still had positive Phalen's sign tests bilaterally. Tr. 531-32. Dr. Baule further reported that surgery was scheduled for plaintiff's right wrist. Tr. 532. There is no evidence in the record showing that plaintiff underwent this surgery or the outcome of any such surgery.

Even if the surgery plaintiff had on her left wrist were deemed to eliminate any significant limiting effects of plaintiff's CTS, that outcome would not, of course, moot the issue of whether, either alone or in combination with plaintiff's other impairments, her CTS was disabling at some point during the alleged period of disability. As the foregoing review of CTS-related evidence illustrates, the time over which plaintiff was found to have CTS during the alleged period of disability exceeded the 12-month duration requirement for impairments. *See* 20 C.F.R. § 404.1509.

On 17 October 2012, Dr. Doyle filled out a "Lumbar Spine Medical Source Statement" in which she expressed numerous opinions, including the opinion that plaintiff was not limited in her ability to use her hands and fingers to grasp, turn, or twist objects, or to perform fine

manipulations. Tr. 364. The ALJ summarized this medical source statement in her decision, but did not include any reference to Dr. Doyle's opinion regarding plaintiff's use of her hands. Tr. 17-18 ¶ 5. She later stated that she gave little weight to Dr. Doyle's "opinion," apparently referring collectively to the opinions expressed in the medical source statement. Tr. 19 ¶ 5. The ALJ stated:

> Dr. Doyle treated the claimant the longest, but her opinion was based on areas that she did not treat such as, the claimant's need for breaks and the amount of time she would have attention off tasks, and the number of her average monthly absences due to her impairments or for treatment. Furthermore, this opinion was not within Dr. Doyle's realm of expertise or treatment. Therefore, the Administrative Law Judge has assigned this opinion little weight (Ex. 5F).

Tr. 19 ¶ 5. The reasons the ALJ gave for attribution of little weight to Dr. Doyle's opinions appear inapplicable to plaintiff's CTS. Dr. Doyle repeatedly diagnosed her as having it and treated her for it (*e.g.*, she encouraged her to wear wrist splints). It would therefore appear that assessment of CTS falls within the area of Dr. Doyle's specialization. Again, the court is left to wonder how the ALJ dealt with evidence relating to plaintiff's CTS.

As stated, at step four, the ALJ concluded that plaintiff could perform her past relevant work as a teacher aide I, childcare worker (*i.e.*, "teacher, preschool" under the DOT), and nursery school attendant. Tr. 19 ¶ 6. All three occupations require frequent handling and occasional fingering. *See* U.S. Dep't of Labor, Employment & Training Admin., *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* §§ 10.02.03 (teacher, preschool), 10.03.03 (nursery school attendant), 11.02.01 (teacher aide I) (1993). The ALJ did not explain plaintiff's ability to perform this work notwithstanding her CTS.

The three occupations the ALJ determined in her alternative step five finding plaintiff could perform—teacher aide II, companion, and playroom attendant—all require frequent

handling. *Id.* §§ 07.01.02 (teacher aide II), 10.03.03 (companion & playroom attendant). The positions of teacher aide II and companion require frequent fingering, and the position of playroom attendant requires occasional fingering. *Id.* Again, the ALJ did not explain how plaintiff had the ability to perform this work despite her CTS.

In the absence of an adequate explanation by the ALJ of her treatment of the evidence of plaintiff's CTS and any limitations it imposed upon her ability to work, the court cannot say that her decision is supported by substantial evidence. As discussed, the deficiency afflicts not only the ALJ's ultimate determination that plaintiff is not disabled, but also the ALJ's underlying nonseverity determination at step two, RFC determination, determination on plaintiff's ability to perform her past relevant work at step four, and alternative determination on the availability of other work to plaintiff at step five. The ALJ's deficient handling of the issue of plaintiff's CTS accordingly requires remand.

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 12) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 14) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 10 January 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge

must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

This 27th day of December 2016.

_____
James E. Gates
United States Magistrate Judge